DISTRICT OF COLUMBIA, Appellant,

v.

Bruce J. TERRIS, Appellee.

No. 90–1055.

District of Columbia Court of Appeals.

Argued Jan. 23, 1992.
Decided Feb. 28, 1992.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellant.

Bruce J. Terris, pro se.

Before FERREN, SCHWELB and FARRELL, Associate Judges.

FARRELL, Associate Judge:

The Department of Finance and Revenue (the Department) disallowed a deduction on appellee's 1984 tax return because appellee had moved out of the District of Columbia before the year-end accounting which determined his distributive share of his partnership's loss. The Superior Court ordered that appellee be permitted to deduct his share of the loss in an amount proportionate to the time he resided in the District during 1984. Concluding as we do that appellee's departure from the District of Columbia did not mark the end of an "accounting period" within the meaning of the controlling statute, and hence the Depart-

ment correctly disallowed the deduction, we must reverse the judgment of the Superior Court.

## I.

In August 1984, appellee Bruce J. Terris moved permanently to Israel and ceased residing in the District of Columbia.[1] Despite this change of domicile, he continued to practice law in the District, and throughout 1984 remained a partner in a law firm located here. Appellee's firm sustained a loss in 1984, and in accordance with the partnership agreement, his distributive share of the loss, $111,384, was determined at the end of the calendar year.

Appellee originally deducted this entire amount on his 1984 District of Columbia individual income tax return. After the Department of Finance and Revenue disallowed the deduction and assessed a deficiency, however, he apportioned the loss and claimed only $69,615 as a deduction. The latter amount represented $15/24$ of appellee's loss and reflected the fact that in 1984 he resided in the District from January 1 through August 15, approximately $15/24$ of the year.

The Department maintained that appellee could not deduct any part of his distributive share because the accounting period for which the partnership's loss was calculated did not close until December 31, 1984—four and one-half months after appellee quit the District. Since no part of the loss had been ascertained or distributable during the time appellee's income was subject to District taxation, the Department refused to recognize the apportioned amount as a valid deduction.

Appellee paid the assessment plus interest, and timely petitioned the Superior Court for relief. D.C.Code § 47–1815.1 (1990). Since the facts were undisputed, the court decided the matter on motion for summary judgment, ruling that appellee was entitled to deduct from his gross income the apportioned amount of loss even though the loss was not determined until after he ceased to be a District resident.

## II.

Excluding personal exemptions and credits for dependents, the District of Columbia taxes "the entire net income of every resident." D.C.Code § 47–1806.1; *see also id.* § 47–1810.1(a)(1). The District does not directly tax the income of a partnership such as the law firm appellee belonged to in 1984. § 47–1808.1. Such partnerships must file returns, however, § 47–1805.2(7), and resident partners are liable for income tax in their individual capacities. § 47–1808.6. Thus, in computing net income, a resident partner must include "his [or her] distributive share, whether distributed or not, of the net income of the partnership for the taxable year." *Id.* At the same time, "[i]ncome received or, in the case of a taxpayer reporting on an accrual basis, income accrued when the taxpayer was not a resident of the District," is excluded from gross income, § 47–1803.-2(a)(2)(F), and thus not subject to District taxation. §§ 47–1803.1, –1806.1; *District of Columbia v. Davis*, 125 U.S.App.D.C. 311, 313, 371 F.2d 964, 966 (District "income tax law … does not tax income received by a taxpayer prior to his becoming a 'resident' of the District"), *cert. denied*, 386 U.S. 1034, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967).

A loss incurred by a resident partner in a given taxable year may properly be deducted from the partner's gross income for that year. §§ 47–1803.3, –1804.3, –1808.6. The District contends, however, that appellee may not deduct even a proportional amount of the loss he claimed because he did not sustain any part of the loss during his taxable year (defined to include a fractional part of a year), *viz.*, within the period when he resided here from January 1 through August 15, 1984.[2]

---

1. The record is unclear as to the date appellee took up residence in Israel. In this opinion, we treat August 15, 1984 as the last day appellee remained domiciled in the District.

2. D.C.Code § 47–1801.4(9) defines "taxable year" as "the calendar year or the fiscal year, upon the basis of which the net income of the taxpayer is computed…. The phrase 'taxable year' includes, in the case of a return made for a

The District relies upon D.C.Code § 47–1808.6, which governs the taxation of income derived from a partnership. In pertinent part, that section provides:

> There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year; or if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed, then his distributive share of the net income of the partnership *for any accounting period of the partnership ending within the taxable year upon the basis of which the partner's net income is computed.* [Emphasis added.]

According to the District, if during 1984 appellee had neither a statutory nor a contractual right to an accounting on or before August 15, then his right to a distributive share of the loss was unmatured as of that date because no "accounting period" of the partnership expired within his period of residency. Thus, his later loss at year's end would be entirely unreportable for his abbreviated taxable year.

Appellee concedes that he had a contractual right to an accounting only at year's end.[3] He contends, however, as he did in the trial court, that the partnership's accounting period nonetheless ended automatically when he moved from the District permanently on August 15. Thus, even though the partnership's liabilities were not finally ascertained until December 31, he concludes that a distributive share of the loss had accrued to him as of August 15.

### III.

We conclude that the District's argument is correct. Although D.C.Code § 47–1808.6, quoted above, is not pellucid, its import in this case is plain. The period for which appellee's partnership computed its loss in 1984 was the entire calendar year. Appellee's taxable year ran only from January 1 through August 15, however; losses or profits received thereafter could not be included in the computation of his net income. §§ 47–1803.1, –1803.-2(a)(2)(F), –1804.3; *District of Columbia v. Davis, supra.* Accordingly, appellee's net income had to be "computed upon the basis of a period different from that upon the basis of which the net income of the partnership [was] computed." § 47–1808.6. He was obliged therefore to include in his calculation "his distributive share of the net income of the partnership for any accounting period of the partnership ending *within* [his own] taxable year," *id.* (emphasis added), but could not properly include his distributive share from an accounting period not ending within that year. §§ 47–1804.2, –1804.3.

Appellee's argument fails because he never showed that any accounting period *of the partnership* ended within the period of January 1 through August 15, 1984. Appellee had no contractual right to an ac-

---

fractional part of a calendar or fiscal year ..., the period for which such return is made...." Both appellee and his partnership regularly reported income on a calendar year basis, and both employed a cash receipts and disbursements method of accounting.

3. The Partnership Agreement provided:
  \* \* \* \* \* \*
  2. *Profits and Losses—Cash Flow.*
  (a) For the purposes of this section, "profits" shall mean the excess of the firm's *annual* revenue over its expenses on a cash basis. Losses shall mean the amount by which the firm's *annual* revenue is less than its expenses on a cash basis;....
  \* \* \* \* \* \*
  (d) *At the end of each calendar year* following 1982, unless otherwise agreed to by the partners, profits and losses shall be distributed between the partners according to the following percentages
  ....

  \* \* \* \* \* \*
  3. *Profits and Losses—Tax Basis.*
  Starting in calendar year 1983, distributable gains and/or losses of the partnership shall be assigned for tax purposes to the partners as follows: 60% to Mr. Terris; 40% to Mr. Sunderland. [Emphases added.]

counting at any time during that period. Note 3, *supra*. Nor does any law require that a partnership compute its profits and losses each time a partner leaves this jurisdiction permanently. Appellee's personal accounting period for the purpose of determining *his* District tax liability may have ended on August 15, but unless an accounting period of the partnership closed on or before that date, he simply could not have had a distributive share to include or deduct in the computation of his 1984 taxable income.

*Guaranty Trust Co. v. Commissioner of Internal Revenue*, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975 (1938), on which appellant relies heavily, does not support his argument. *Guaranty Trust* involved a New York partnership which operated on a fiscal year ending July 31, and a partner who reported income on a calendar year basis. The partner died on December 16, 1933. The issue was whether the deceased partner's distributive share of the partnership's earnings for the period August 1 through December 16 was taxable income for 1933, *i.e.*, income in addition to his taxable share of the profits for the fiscal year which closed on July 31. The Court held that the share for the later period was taxable, rejecting the claim that under the federal statute governing taxation of partnership income there could be only a single accounting period of the partnership within the partner's taxable year.

Critical for the Court, however, in our view, was that under New York law a partnership's accounting period ended automatically when a partner died. *Id.* at 495, 58 S.Ct. at 675. The partner's "death dissolved the partnership, terminated his right to share in the [future] profits, and fixed the date as of which the surviving partners were bound to account for the profits." *Id.* at 495–96, 58 S.Ct. at 675. This was decisive because, as the Court explained, "a partner's profits are ascertainable only on an accounting for such periods as may be *fixed by law or by the partnership itself.*" *Id.* at 497, 58 S.Ct. at 676. (emphasis add-

ed); *see also id.* at 498, 58 S.Ct. at 676 ("[s]ince the partner is entitled to profits only upon a partnership accounting at the end of an accounting period, his profits become subject to income tax when and as *they are thus ascertained*") (emphasis added). The Court rejected the argument that the only "accounting period" ending within the partner's taxable year was the partnership's fiscal year which ended July 31. No doubt, as appellant urges, the Court was influenced by the fact that "income derived by a partner from the firm business between the end of the partnership fiscal year and the date of [the partner's] death in the same year [could] not be taxed in any *other* [year]." *Id.* at 497, 58 S.Ct. at 676 (emphasis added). But the analytic basis of the Court's holding was that the partner's death marked the end of a formal accounting period "as fixed by law or by the partnership itself." *Id.*

In this case, no law or provision of the partnership agreement affords a similar right to an individual partner who has merely changed residence and moved from the District of Columbia. As explained earlier, the partnership agreement provided for annual accountings to be done at year's end. Appellee had no legal right to demand an earlier accounting, and hence no right to a distribution of the loss during the time his income was subject to District taxation. In *Guaranty Trust*, the Court explained that "[r]eceipt of income or accrual of the right to receive it within the tax year is the test of taxability." *Id.* at 498, 58 S.Ct. at 676. In the District of Columbia, the same reasoning controls the deductibility of losses incurred as a partner. § 47–1804.3. Appellee did not "receive" his loss within his taxable year, nor had his right to receive it accrued. While the change of residence certainly may have affected his tax liability, it did not therefore cause an accounting period of the partnership to end "within the taxable year upon the basis of which [his] net income [was] computed." D.C.Code § 47–1808.6.[4]

---

**4.** Appellee faults this analysis as leading to absurd results because, if he had simply dissolved his two-person partnership on August 15 instead of continuing it, he would have been entitled to an accounting and his distributive share of the partnership's 1984 loss even had he reconstitut-

## IV.

■ Appellee makes the alternative argument that, even if the partnership's "accounting period" ended on December 31, 1984, his own loss still should be included in his 1984 taxable year because his individual taxable year also ended December 31, 1984.[5] We reject this argument as well.

■ Unlike many states, the District of Columbia predicates individual income tax liability solely on the taxpayer's resident status and not on the source of the income. D.C.Code §§ 47–1806.1, –1810.1(a)(1); *District of Columbia v. Davis, supra; see also* D.C.Code § 1–233(a)(5) (barring Council from taxing income "of any individual not a resident of the District"). The *Davis* court agreed that "[t]he tax law expressly recognizes that the status of a taxpayer may change," 125 U.S.App.D.C. at 313, 371 F.2d at 966, and that "the phrase 'taxable year' . . . is properly interpreted to be the fractional part of the year in which the taxpayer resided in the District." *Id.* at 314, 371 F.2d at 967. Appellee no longer resided in the District of Columbia after August 15, 1984. It follows that his taxable year ended on August 15, and that he had neither the duty nor the right to report income received or losses incurred thereafter. *See* D.C.Code §§ 47–1803.-2(a)(2)(F), –1804.2, –1804.3.

D.C.Code § 47–1804.1 does not yield a contrary conclusion. That provision requires that a taxpayer's income for the purpose of District taxation be computed "on the basis of the same calendar or fiscal year" as the taxpayer employs for the purpose of federal income taxation. *Id.* The obvious purpose is to ensure uniformity, presumably a matter of convenience both to the taxpayer and the District, as well as a safeguard against accounting manipulation. The section does not purport to address the situation where, as in this case, the taxpayer is liable federally for tax on his entire annual income, but in the District for tax on only a portion of his income because he resided here for only part of the year. Appellee concedes that his income was no longer subject to District taxation once he had moved permanently from the District. It is highly unlikely that the legislature would have intended appellee's local taxable year, the relevant period for calculating his taxable income, to include a period when his income was immune from local taxation.

## V.

The judgment of the Superior Court is vacated except for the sum of $443.41 which the District concedes—for unrelated reasons—it must refund with interest.

*So ordered.*

---

ed the firm the next day. Assuming the legitimacy of such a transaction, it does not persuade us to ignore the apparent meaning of the statute which plainly requires that an accounting period of the partnership (as defined by law or agreement) have ended within the taxable year—an event appellee simply cannot point to in actuality. Whatever the ease with which a partner in a two-person firm could secure an accounting upon changing residence, the difficulty would obviously be far greater—both legally and practically—in the case of larger partnerships. What appellee perceives as an overly formalistic interpretation of the phrase "accounting period" may make perfect sense as applied to the broad run of partnerships.

Appellee also faults the District's argument on policy grounds because it means that the District must forgo taxing the income earned by a partner when he resided in the District, if as a result of his moving, his District taxable year ends before the partnership's taxable year ends. We think this argument is properly addressed to the legislative branch, as the District points out. We note, however, that in 1987 the Council of the District of Columbia appeared to tighten the meaning of "accounting period" still further by adding to § 47–1808.6 the sentence: "The phrase 'accounting period' as used in this section refers to *the calendar or fiscal year of a partnership*" (emphasis added).

5.  The trial court did not reach this contention.