J-A08016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EARL LOUIS HOLLINS | |
| Appellant | No. 682 WDA 2018 |

Appeal from the Judgment of Sentence Entered November 29, 2017
In the Court of Common Pleas of Beaver County
Criminal Division at No.: CP-04-CR-0002638-2015

BEFORE: PANELLA, P.J., STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.: **FILED July 1, 2019**

Appellant Earl Louis Hollins appeals from the November 29, 2017 judgment of sentence entered in the Court of Common Pleas of Beaver County ("trial court"), following his jury convictions for aggravated assault (serious bodily injury), assault on law enforcement, criminal attempt – murder, aggravated assault (bodily injury), aggravated assault (deadly weapon), firearms carried without license, simple assault, and recklessly endangering another person ("REAP").[1] Upon review, we affirm.

The facts and procedural history underlying this case are undisputed. Briefly, in connection with the October 28, 2015 shooting of Alan Loskoch,

---

[1] 18 Pa.C.S.A. §§ 2702(a)(2), 2702.1(a), 901(a), 2502(a), 2702(a)(3), 2702(a)(4), 6106(a)(1), 2701(a)(1), and 2705, respectively.

Harmony Township Police Officer ("Officer Loskoch"),[2] Appellant was charged with the foregoing crimes. Following a preliminary hearing, all charges were held for court. On June 15, 2017, Appellant filed a "Petition for Retention of A Criminal Investigator," arguing that he needed to investigate and interview prosecution and defense witnesses, potential eye witnesses and physical evidence. On June 16, 2017, the trial court denied Appellant's petition for the appointment of a private investigator. On July 20, 2017, Appellant filed an "Omnibus Pre-trial Application," containing, among other things, a request for discovery. Specifically, Appellant requested from the Commonwealth any police reports that Officer Loskoch created with respect to his prior encounters with Appellant and a list of Commonwealth's trial witnesses. The trial court conducted a hearing on the omnibus motion on August 9, 2017, at which Appellant once again repeated his discovery requests for police reports and witness lists. *See* N.T. Suppression, 8/9/17 at 54-55 ("I know at this point the Commonwealth has not prepared a list of witnesses, but I would ask that at some point in time the Commonwealth be required to provide me with a list of those witnesses[.]"). On August 30, 2017, the trial court issued an order directing the Commonwealth to comply Pa.R.Crim.P. 573 "by producing the appropriate discovery."[3]

_____

[2] Appellant fired a round at Officer Loskoch, striking him in the chest area approximately two inches above his left nipple. But for the Kevlar vest, Officer Loskoch would have sustained serious bodily injury.

[3] Through that order, the trial court also denied Appellant's suppression motion and petition for writ of *habeas corpus*.

On September 5, 2017, the day of jury selection, Appellant filed a "Supplemental Omnibus Pre-trial Application," seeking, *inter alia*, to suppress alleged custodial statements he made to Casey E. Pelton ("Pelton") while incarcerated in Beaver County Jail. Pelton claimed that Appellant had confessed to him. Appellant argued that his alleged statements to Pelton ran afoul, among other things, his constitutional rights guaranteed under the Sixth, Fifth and Fourteenth Amendments to the United States Constitution. The next day, on September 6, 2017, Appellant filed a "Supplemental Omnibus Pre-trial Application," requesting, *inter alia*, a trial continuance. One of the reasons Appellant provided for seeking a continuance was the Commonwealth's late disclosure of the confession evidence Pelton would present at trial. The trial court denied the supplemental and second supplemental motions.

Following trial, which concluded on September 15, 2017, the jury found Appellant guilty of all charged crimes, including aggravated assault on law enforcement and firearms carried without license. On November 29, 2017, the trial court sentenced Appellant to twenty to forty years' imprisonment for aggravated assault on law enforcement and a consecutive term of three to six years in prison for carrying firearms without license.[4]

On December 11, 2017, Appellant filed an "Omnibus Post-Sentence Motion," seeking, *inter alia*, a new trial or a modification of his sentence. In

_____

[4] The trial court imposed no further penalty on the remaining counts.

- 3 -

support for his motion for a new trial, Appellant pointed out that he was denied appointment of a private investigator and that the Commonwealth committed various discovery violations. Specifically, Appellant argued that the Commonwealth revealed to him on the eve of trial that Officer Loskoch created no police reports detailing his prior encounters with Appellant. **See** Omnibus Post-Sentence Motion, 12/11/17, at 7. Additionally, Appellant argued that the Commonwealth disclosed to him merely two days prior to the start of trial that it intended to call to the stand Pelton, a jailhouse snitch who claimed Appellant confessed the crimes at issue to him.[5] **Id.** at 9. Appellant asserted that he received relevant discovery material related to Pelton on the day of trial. **Id.** Because of the Commonwealth's late disclosure of discovery materials, Appellant argued that he was prejudiced as he did not have a meaningful opportunity to prepare for trial. Appellant also challenged several evidentiary rulings made by the trial court. On April 10, 2018, the trial court denied Appellant's post-sentence motion. Appellant timely appealed to this Court.[6]

---

[5] As detailed earlier, our review of the record does not reveal that Appellant sought to exclude Pelton's testimony on the basis of the Commonwealth's discovery violations. At worst, Appellant sought to suppress his own statements to Pelton based on alleged constitutional violations. At best, he requested a trial continuance.

[6] The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court, however, issued a Pa.R.A.P. 1925(a) opinion on July 10, 2018, wherein it adopted its April 10, 2018 memorandum denying Appellant's post-sentence motion.

On appeal, Appellant presents seven issues for our review, reproduced verbatim here:

I. Whether the trial court erred in denying an indigent defendant the constitutional right to effective legal representation by denying legal counsel the authority to retain private investigator resulting in a deprivation of pre-trial and trial investigative services leading to potential exculpatory evidence[.[7]]

II. Whether the trial court erred in permitting [Officer] Loskoch to testify to all prior official contact he had with [Appellant] despite the Commonwealth's tardy in-trial compliance with a discovery order by responding that no police reports of any such contact incidents existed leaving [Appellant] no time to investigate and marshal evidence to contradict and impeach such testimony[.[8]]

III. Whether the trial court erred in permitting the Commonwealth to present the testimony of Pelton to an alleged jailhouse confession despite the Commonwealth's tardy in-trial compliance with a discovery order by providing said notice of and related discovery material leaving [Appellant] no time to investigate and marshal evidence and locate and secure the attendance of witnesses who could

---

[7] "Appointment of expert witnesses and the provision of public funds to hire them to assist in the defense against criminal charges are decisions within the trial court's sound discretion and will not be reversed absent an abuse thereof." **Commonwealth v. Wholaver**, 989 A.2d 883, 894 (Pa.2010) (citing **Commonwealth v. Albrecht**, 720 A.2d 693, 707 (Pa. 1998)).

[8] It is settled:

[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

**Commonwealth v. Tyson**, 119 A.3d 353, 357-58 (Pa. Super. 2015) (internal citations omitted).

- 5 -

> effectively contradict and impeach said confession testimony[.[9]]

    IV.    Whether the trial court erred in refusing to permit [Appellant] to elicit testimony from inmate Ikard regarding personal knowledge of the manner in which Pelton would benefit from his testimony against [Appellant.]

    V.    Whether the trial court erred in refusing to permit [Appellant] to elicit testimony from a cosmetologist experienced in African American hairstyles regarding the different hairstyles for males[.]

    VI.    Whether the trial court erred in refusing to instruct the jury (A) that eyewitness identifications, even if made with a high level of confidence, can be unreliable, (B) to receive [Officer] Loskoch's identification testimony with caution as one of doubtful accuracy, (C) to consider the current probation and parole status of a witness and the potential incarceration for violations thereof in deciding the believability of the testimony of a witness, (D) to consider the probation or parole status of a witness at the time he first talked to police and the potential incarceration of the same in deciding whether or not to believe all or part of the testimony of the witness, (E) of the limits using inferences to prove crimes, (F) of no adverse inference from either (1) [Appellant's] detention since his arrest or (2) Sheriff Deputies' seated or standing near counsel table for [Appellant.[10]]

---

[9] This particular issue is waived because, as indicated earlier, Appellant failed to raise it before the trial court. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.E. 103(a) ("[a] party may claim error in a ruling to admit or exclude evidence only: (1) if the ruling admits evidence, a party, on the record: (A) makes a timely objection, motion to strike, or motion *in limine*; and (B) states the specific ground, unless it was apparent from the context[.]").

[10] "Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Cannavo**, 199 A.3d 1282, 1286 (Pa. Super. 2018) (cleaned up). "Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." **Commonwealth v. Hamilton**, 766 A.2d 874, 878 (Pa. Super. 2001) (brackets omitted).

VII. Whether the trial court abused its discretionary authority under the Sentence Code and/or the Sentence Guidelines in imposing an additional consecutive sentence on the firearms violation as unnecessary to comply with the criteria of the protection of the public and the gravity of the offense as it relates to the impact on the life of the victim and on the community and runs counter to the rehabilitative needs of [Appellant.[11, 12]]

Appellant's Brief at 5-6 (unnecessary capitalizations omitted).

After careful review of the record, and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's issues. *See* Trial Court Opinion, 4/10/18, at 9-39. Accordingly, we affirm Appellant's November 29, 2017 judgment of sentence. We further

_____

[11] When reviewing a challenge to the trial court's discretion, our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002)), *appeal denied*, 64 A.3d 630 (Pa. 2013).

[12] We explained in *Commonwealth v. Radecki*, 180 A.3d 441 (Pa. Super. 2018) that "excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review." *Radecki*, 180 A.3d at 468 (citations omitted). Accordingly, Appellant's argument that the trial court abused its discretion in imposing a consecutive sentence for the firearms conviction *sub judice*, and thus rending his aggregate sentence excessive, does not raise a substantial question. Even if Appellant had presented a substantial question, we still would not conclude that he is entitled to relief based on the reasons outlined in the trial court's April 10, 2018 opinion. *See* Trial Court Opinion, 4/10/18, at 36-39.

direct that a copy of the trial court's April 10, 2018 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/2019

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
P E N N S Y L V A N I A
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :

       v.                        :       Case No:      2638 – 2015

EARL L. HOLLINS                :
     Defendant,                  :

## MEMORANDUM OPINION AND ORDER

KNAFELC, J.                                     APRIL _10th_, 2018

On September 15, 2017, following a jury trial held on September 5 through September 15, 2017 before the Honorable Harry Knafelc, Defendant was convicted of one Count of Aggravated Assault (F1),[1] one Count of Assault of Law Enforcement Officer (F1),[2] one Count of Criminal Attempt to Criminal Homicide (F1),[3] two Counts of Aggravated Assault (F2),[4] one Count of Firearms not to be Carried without a License (F3),[5] one Count of Simple Assault (M2),[6] and one Count of Recklessly Endangering Another Person (M2).[7]

On November 29, 2017, Defendant was sentenced to an aggregate term of imprisonment of 23 to 46 years.[8]

On December 11, 2017, Defendant through trial counsel, Dennis DiMartini, filed a timely motion for post-sentence relief pursuant to Rule 720 of the Pennsylvania Rules of Criminal

---

[1] Count 1 of the Information charged under 18 Pa.C.S. §2702(a)(2) .
[2] Count 2 of the Information charged under 18 Pa.C.S. §2702.1(a).
[3] Count 3 of the Information charged under 18 Pa.C.S. §901(a).
[4] Count 4 of the Information charged under 18 Pa.C.S. §2702(a)(2); and
   Count 5 of the Information charged under 18 Pa.C.S. §2702(a)(4).
[5] Count 6 of the Information charged under 18 Pa.C.S. §6106(a)(1).
[6] Count 7 of the Information charged under 18 Pa.C.S. §2701(a)(1).
[7] Count 8 of the Information charged under 18 Pa.C.S. §2705
[8] Defendant was sentenced to 20 to 40 years for Count 2, 3 to 6 years for Count 6, and no further penalty for the remaining Counts.

1

Procedure. Defendant's motion complains of multiple Discovery violations and multiple errors on rulings of evidence among other errors.

Defendant requests the following relief: A. a motion in arrest of judgment; B. a motion for a new trial; and C. a motion for modification of sentence.

The Opinion of this Court and an appropriate Order shall follow.

## DISPOSITION OF DEFENDANT'S REQUESTS FOR RELIEF

A. *Motion in Arrest of Judgment*

Defendant requests that the judgment entered against him and in favor of the Commonwealth be set aside inasmuch as the evidence was insufficient as a matter of law to have found Defendant guilty beyond a reasonable doubt. In reviewing a request for a motion in arrest of judgment, the Court considers whether the evidence offered by the Commonwealth was legally sufficient to support the verdict. *Commonwealth v. Froelich*, 458 Pa. 104, 326 A.2d 364 (1974). The evidence in this case supports the verdict, and the motion for arrest in judgment is denied.

B. *Motion for a New Trial*

Defendant argues that he is entitled to a new trial, stating that the evidence was insufficient to support a guilty verdict as to each of the charges and that the verdict was contrary to the weight of the evidence presented at trial. This Court disagrees. A trial court should award new trial on grounds that verdict is against the weight of evidence only when the verdict is so contrary to evidence as to shock one's sense of justice and make award of new trial imperative, so that right may be given another opportunity to prevail. *Commonwealth v. Whitney*, 511 Pa. 232, 239, 512 A.2d 1152, 1155–1156 (1986). Where, as here, a finding of guilt is supported by the record, a motion for a new trial must be denied. *Commonwealth v. Larew*, 289 Pa. Super. 34, 37, 432 A.2d 1037, 1038 (1981).

2

C.    *Motion for Modification of Sentence*

Imposition of proper sentence is matter vested in sound discretion of trial court. *Com. v. High*, 450 A.2d 158, 304 Pa.Super. 174, 1982; *Com. v. Galloway*, 448 A.2d 568, Super.1982; *Com. v. Corson*, 444 A.2d 170, 298 Pa.Super. 51, 1982; *Com. v. Ellison*, 439 A.2d 136, 293 Pa.Super. 320 (1982). "[T]he extent of sentence is a matter within the discretion of the trial judge and will not be disturbed if within the statutory limits." *Com. v. Zelnick*, 202 Pa. Super. 129, 131, 195 A. 2d 171, 173 (1963). However, where the legislature has deemed to enact a mandatory minimum term of imprisonment, that statute must be followed and the standard guidelines in P.S. § 303.16(a) "shall not supersede the mandatory sentences provided." 42 Pa.C.S. § 9719.1(b). Where, as here, a mandatory minimum term of imprisonment was enacted by the legislature, the Court lacks the authority to sentence the Defendant to a term of imprisonment less than the statutory minimum, and the request must be denied.

The rationale supporting the Court's decision to deny the requested relief is set out below.

## ISSUES

Defendant raises the following arguments in support of his motions:

A. Motion in Arrest of Judgment

**1. Insufficient evidence as to Count 3 and Count 6;**

**2. The verdict is against the weight of the evidence for all Counts.**

B. Motion for New Trial:

**1. Denial of Defendant's right to effective assistance of legal counsel;**

**2. Discovery violations;**

**3. Court erred in denying Defendant's pre-trial motions to suppress defendant's statements made to police outside Defendant's residence on October 29, 2015;**

3

**4. Trial Court erred on evidentiary rulings at trial;**

**5. Trial Court erred by refusing to instruct the jury as to numerous instructions requested by Defendant.**

C. request for reconsideration as the sentence for Count 3 is overly harsh and is outside the standard range.

The Court will address each argument *in seriatim*.

## RULES, ANALYSIS, AND CONCLUSIONS OF LAW

A. Motion in Arrest of Judgment

**1. Insufficient evidence as to Count 3 and Count 6**

Defendant challenges the sufficiency of the evidence as to Count 3 (Criminal Attempt to Criminal Homicide) and Count 6 (Firearm not to be Carried without a License) and requests that the judgment should be arrested and a judgement of acquittal entered.

> When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as the verdict winner and must determine whether the evidence was such as to enable a fact finder to find that all of the elements of the offense were established beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Reed*, 851 A.2d 958, 963 (Pa.Super. 2004) (internal citations and quotations omitted).

4

### a. Criminal Attempt to Criminal Homicide

Defendant argues that even assuming Defendant was the individual who discharged a firearm at Officer Loskoch, the only evidence introduced at trial was that one bullet struck the Kevlar vest of the officer which did not result in any "serious bodily injury"; without evidence of the bullet striking a vital part of the victim's body causing "serious bodily injury" the evidence is insufficient to infer a specific intent to kill. This Court disagrees.

"For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal. *Commonwealth v. Hobson*, 413 Pa.Super. 29, 604 A.2d 717, 719-720 (1992). We have held that a specific intent to kill can be inferred from the circumstances surrounding an unlawful killing. *Commonwealth v. Geathers*, 847 A.2d 730, 737 (Pa. Super. 2004). Moreover, specific intent to kill may be inferred from the fact that the accused used a deadly weapon to inflict injury to a *vital* part of the victim's body." *Com. v. Robertson*, 2005 PA Super 152, ¶ 14, 874 A.2d 1200, 1207 (2005).

Here, the Jury found that Defendant was the individual who discharged a firearm—a deadly weapon—at Officer Loskoch. The evidence presented at trial showed that a round fired by Defendant struck the officer in the chest—a vital part of the body—and but for the protection of his Kevlar vest, the round would have caused serious bodily injury to the Officer.

Defendant's argument that a conviction cannot stand without evidence that serious bodily injury was actually inflicted is of no moment and is contrary to established Pennsylvania case law. *See, Com. v. Mapp*, 232 Pa. Super. 435, 437, 335 A.2d 779, 781 (1975) ("[t]he offense of attempt with intent to kill is completed by the discharging of a firearm at a person with intent to

5

kill, despite the fortuitous circumstances that no injury is suffered." *Id.*) (citing *Commonwealth ex rel. Robinson v. Baldi*, 106 A.2d 689 (1954)).[9]

Therefore, Defendant's request for arrest of judgment and judgment of acquittal as to Count 3 (Criminal Attempt to Criminal Homicide) is denied.

### b. Firearm Not to Be Carried without a License

The offense of Firearm not to be Carried without a License is defined by 18 Pa.C.S.A. §6106(a)(1) as follows:

> Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

Pursuant to Pennsylvania's Standard Jury Instruction 15.6106, in order for the Appellant to have been found guilty of §6016(a)(1), the Commonwealth was required to prove the following three elements beyond a reasonable doubt:

- *First*, that the defendant:

  carried a firearm concealed on or about his person.

  A "firearm" is any pistol or revolver with a barrel less than 15 inches or any pistol, revolver, rifle, or shotgun with an overall length of less than 26 inches.

  To be a "firearm," the specific object charged must either be operable, that is, capable of firing a projectile, or, if inoperable, that the defendant had under his control the means to convert the object into one capable of firing a shot. You may, if you choose, infer that the object was an operable firearm from the way it appears and feels;

- *Second*, that the defendant was not in his place of abode that is, his home or his fixed

---

[9] This holding is consistent with Pennsylvania's long standing jurisprudence rejecting the defense of factual impossibility. In Crimes Code § 901(b), it is provided that "[i]t shall not be a defense to a charge of attempt that because of a misapprehension of the circumstances it would have been impossible for the accused to commit the crime attempted." § 1:63.Impossibility defense, 14 West's Pa. Prac., Crim. Offenses & Defenses § 1:63 (6th ed.).

place of business; and

- *Third*, that the defendant did not have a valid and lawfully issued license for carrying the firearm.

Defendant avers the only evidence produced at trial as to the element of concealment was that Officer Loskoch never saw any weapon prior to seeing a flash immediately prior to the bullet striking his vest. Defendant argues that without evidence of seeing the gun concealed as it is being displayed, the evidence is insufficient to infer concealment. The Court finds this argument unpersuasive.

"[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence" and "the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence, coupled with the reasonable inferences drawn therefrom, overcomes the presumption of innocence." *Com. v. Lopez*, 2012 PA Super 161, 57 A.3d 74, 80 (2012) (quoting *Commonwealth v. Stays*, 40 A.3d 160, 167 (Pa.Super.2012) (citations omitted)).

Evidence at trial did establish that Officer Loskoch never saw a gun as he drove up towards the Defendant. But he testified that the defendant was wearing a hoodie and had his hands out of sight.[10] When asked to see his hands, the individual pulled from his waist line and fired three shots.[11] All of this evidence would be consistent with a person who is carrying a firearm concealed. The very nature of concealment is that the gun would not be plainly visible prior to it being drawn. *See, e.g., Com. v. Pressley*, 433 Pa. 163, 166, 249 A.2d 345, 346 (1969)(finding evidence of concealment sufficient where officer testified "his partner saw [defendant] reach

---

[10] T.T., Vol. V, at 20.
[11] *Id.* at 23-24.

7

under his sweater, a bus passed, and then the officers saw a gun on the ground at [defendant's] feet." *Id.*).

Furthermore, if the jury believed that the Defendant was the shooter and was present on the street in question the night of the incident attempting to break into cars, the jury could reasonably conclude that such a person would not openly carry a firearm in his hand the entire time nor that he had a holster for open carry. It is far more likely for a person engaged in covert criminal behavior to conceal the instruments of crime he has with him so as not to draw unwanted attention. In the instant case, with this circumstantial evidence before the jury, it would be reasonable for the jury to infer the defendant was carrying the firearm concealed. *Com. v. Horshaw*, 237 Pa. Super. 76, 80, 346 A.2d 340, 342–43 (1975) (finding evidence sufficient where no direct evidence of concealment was presented to the jury, holding "The evidence was sufficient to allow the jury to infer that the appellant concealed the gun." *Id.*).

## 2. The Verdict is Against the Weight of the Evidence for All Counts

A trial court should find that the verdict is against the weight of evidence only when the verdict is so contrary to evidence as to shock one's sense of justice and make award of new trial imperative. *Commonwealth v. Whitney*, 511 Pa. 232, 239, 512 A.2d 1152, 1155–1156 (1986).

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. *Com. v. Cousar*, 928 A.2d 1025, 593 Pa. 204 (2007), *certiorari denied* 128 S.Ct. 2429, 553 U.S. 1035, 171 L.Ed.2d 235, *denial of post-conviction relief affirmed in part, vacated in part* 154 A.3d 287.

Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Com. v. Dupre*, 866

8

A.2d 1089 (Pa. Super. 2005), *appeal denied* 879 A.2d 781, 583 Pa. 694 (stating a trial court's exercise of discretion in finding that a verdict is or is not against the weight of the evidence is one of the least assailable reasons for granting or denying a new trial). The trial judge does not sit as the 13th juror, but rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Com. v. Hunter*, 768 A.2d 1136 (Pa. Super. 2001), appeal denied 796 A.2d 979, 568 Pa. 695.

With the aforementioned standards in mind, the Court notes that the predominant focus of this trial concerned the identification of the shooter; Mr. Hollins' only defense to the charges was that he was not the man who shot Officer Loskoch.

The Court has determined that sufficient evidence was established with respect to all charges of which the Defendant was convicted. The jury determined the credibility of the Commonwealth witnesses after the Court specifically charged on the factors which the jury should take into account in deciding on whether to believe the testimony of the various witnesses. In reviewing all of the evidence, the Court cannot fault the jury's decision as shocking one's sense of justice, and therefore cannot find that the verdicts were against the weight of the evidence.

B. Motion for New Trial

**1. Denial of Defendant's right to effective assistance of legal counsel**

On June 15, 2017, trial counsel for the Defendant filed a *Motion for Appointment of Expert Witness and Motion for Retention of Criminal Investigator*. Defendant claimed a private investigator was necessary to investigate or interview prosecution witnesses, potential

9

eyewitnesses, potential defense witnesses, and physical evidence. This Court denied Defendant's motion by Order issued June 19, 2017.

Defendant now claims the denial of his Motion for a private investigator denied him his 6th amendment right to effective assistance of legal counsel. Specifically, Defendant avers a private investigator was necessary in locating and properly interviewing and securing the attendance of prosecution witnesses, potential eyewitnesses, and/or potential defense witnesses, including: Gregory Barger; Akeliah Truss; possibly Frederick Rotondo; and other disinterested witnesses to the events on October 29, 2015. Defendant also claimed the investigator was necessary in locating documentary evidence and physical evidence including all police reports of incidents in which Loskoch claims to have had prior contact with Defendant. This Court finds this claim to be without merit.

The Commonwealth is not obligated to pay for an expert's services. *Com. v. Wholaver*, 605 Pa. 325, 344, 989 A.2d 883, 894 (2010). "Appointment of expert witnesses and the provision of public funds to hire them to assist in the defense against criminal charges are decisions within the trial court's sound discretion and will not be reversed absent an abuse thereof." *Id.* (*citing, Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 707 (1998); *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 73 (1994)).

In *Carter*, the Supreme Court of Pennsylvania found no abuse of discretion where the trial court denied a request for a handwriting expert to examine a letter written to defendant by another inmate, the last line of which indicated the defendant was not present the night of the murder for which he was charged. In rejecting defendant's argument that the handwriting expert could have testified that the last sentence was in the other inmate's handwriting and therefore destroyed his credibility as a witness, the Supreme Court responded, "[w]e find that the jury had

10

the opportunity to assess [his] credibility as a witness on the stand. [He] testified on the issue of whether or not he wrote the last sentence of the letter. We cannot find that the trial court abused its discretion in refusing to approve a handwriting analyst." *Carter*, 537 Pa. at 258, 643 A.2d at 73.

In *Bardo*, the Supreme Court found a similar claim related to a request for a private investigator to be without merit. In reaching its decision, the Court noted, "appellant does not explain what the investigator would have done differently if he had been appointed by the court." *Com. v. Bardo*, 551 Pa. 140, 149, 709 A.2d 871, 875 (1998).

Here, the Court finds no prejudice was suffered by Defendant as a result of the Court's denial of his request for a private investigator.

In the matter of Akeliah Truss (a potential alibi witness), this Court cannot see how a private investigator would have aided the Defendant as trial counsel made excellent efforts to secure the attendance of Akeliah Truss, but was unable to ascertain her presence at a treatment facility due to the facility's reluctance to disclose whether Ms. Truss was present on the premises or not—likely due to ERISA concerns.

Furthermore, the absence of Ms. Truss did not prejudice the Defendant as Defendant produced a number of alibi witnesses at trial, and, like *Carter*, the jury had the opportunity to assess the credibility of these witnesses to determine the viability of Defendant's alibi.

Neither can this Court find any prejudice suffered by Defendant regarding Gregory Barger. Despite the lack of a private investigator, Mr. Barger was contacted by defense counsel, called as an alibi witness in this case, and trial counsel questioned Mr. Barger extensively.[12]

As to the other witnesses and documents, this Court cannot see the necessity of appointing a private investigator where the documents at issue were in the possession of the

---

[12] *See*, T.T. Vol. VI, at 85-102.

11

police and trial counsel had discovery tools available to him to compel the disclosure of evidence the law requires be disclosed. If discovery rules did not require the disclosure of the documents, *See section 2.i., infra*, and the police did not want to turn them over, the Court does not see how a private investigator would have solved this dilemma for the Defendant.

Furthermore, Defense counsel was able to effectively cross-examine Loskoch regarding his previous interactions with the Defendant.[13]

Lastly, Defense counsel was able to produce ample witnesses of the events that transpired on October 29, 2015 outside of Defendant's residence. Hours of testimony were elicited at a suppression hearing and at trial concerning the events that transpired October 29, 2015. Defendant examined family members, other household members, and neighbors, and cross-examined numerous police officers regarding the night of October 29, 2015. While a private investigator could have arguably discovered more witnesses to the incident, the effect of the testimony would have been cumulative at best.

Due to the foregoing, the Court finds it did not abuse its discretion in denying the appointment of a private investigator.

**2. Discovery violations**

Defendant argues that numerous discovery violations warrant a new trial.

A trial court abuses its discretion in fashioning a remedy for a discovery infraction "if the judgment exercised is manifestly unreasonable," in light of the availability of less severe, yet effective, solutions. *Com. v. Malone*, 356 Pa. Super. 281, 514 A.2d 612, 613 (1986).

"A defendant seeking relief from the discovery violation must demonstrate prejudice in order to be entitled to a new trial." *Com. v. Simmons*, 541 Pa. 211, 662 A.2d 621, 634 (1995). *See also, Com. v. Jones*, 542 Pa. 464, 668 A.2d 491, 512 (1995), *cert. denied sub nom. Jones v.*

---

[13] T.T. Vol. V, at 94-103.

12

*Pennsylvania*, 519 U.S. 826, 117 S. Ct. 89, 136 L. Ed. 2d 45 (1996); *Com. v. Rosa*, 415 Pa. Super. 298, 609 A.2d 200, 203–204 (1992) (defendant seeking relief from tardy disclosure must demonstrate prejudice). That is, a defendant seeking a new trial must show that the violation affected the fairness or outcome of the trial. *Com. v. Wallace*, 500 Pa. 270, 455 A.2d 1187, 1192 (1983); Com. v. Johnson, 310 Pa. Super. 385, 456 A.2d 988, 992 (1983). *See also, Com. v. Chambers*, 528 Pa. 558, 599 A.2d 630, 637 (1991).

### i. Police Reports re: Prior Contact with Defendant

By way of discovery letters dated July 9, 2017, and August 16, 2017, Defendant requested discovery of any police report written by Loskoch regarding prior contacts between himself and Defendant. The Court ordered the Commonwealth to comply with the discovery rules by its order dated August 30, 2017.

The Commonwealth eventually informed defense counsel on the eve of trial that Loskoch made no police reports of any incidents in which he claims to have had prior contact with the Defendant.

Defendant claims he was prejudiced by this late disclosure that the requested documents did not and never did exist, because he had no time to investigate or secure the attendance of all police reports of all other police officers regarding those incidents of prior contact. This Court does not see how the failure of the Commonwealth to turn over documents that do not and never did exist is a violation of the discovery rules. *Com. v. Collins*, 957 A.2d 237, 598 Pa. 397 (2008) (The Commonwealth does not violate the pretrial-discovery rule when it fails to disclose to the defense evidence that it does not possess and of which it is unaware).

Furthermore, a defendant seeking relief from a discovery violation must demonstrate prejudice. *See, Com. v. Simmons*, 541 Pa. 211, 662 A.2d 621, 634 (1995); *see also, Com. v.*

13

*Roles*, 2015 PA Super 115, 116 A.3d 122 (2015), *appeal denied*, 128 A.3d 220 (Pa. 2015) (A discovery violation and testimony exceeding the scope of the expert's report did not automatically require a new trial. A showing of prejudice was still required.). While Defendant claims he had no time to investigate or secure the attendance of all police reports relevant to the prior contacts between Defendant and Officer Loskoch, he does not explain how this prejudiced him. *See, e.g., Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 298 (1998) (no prejudice when late disclosure of exculpatory evidence did not impair defendant's ability to present evidence at issue). Defense counsel was made aware of the non-existence of the reports and was able to effectively cross-examine Loskoch regarding his previous interactions with the Defendant.[14] Because no discovery violation took place and no prejudice was suffered, Defendant's request for a new trial on this basis is meritless.

### ii. Medical Records and Treating Physician of Loskoch

In his Omnibus Pre-Trial Application filed July 20, 2017, Defendant requested an order directing the Commonwealth to provide all medical records from Allegheny General Hospital and a list of all medical witnesses related to the examination, diagnosis and/or treatment of Loskoch. The Commonwealth agreed to secure and provide these records in a timely manner during the Omnibus Pre-trial hearing held August 9, 2017.

Defendant again requested the same records and information in a discovery letter dated August 17, 2017. The pre-trial court did not specifically address this request and entered an order on August 30, 2017 directing the Commonwealth to comply with the discovery rules.

Defense counsel received the medical records on or about September 4, 2017 and notice of intent to call the treating physician on or about September 5, 2017.

---

[14] T.T. Vol. V, at 94-103.

14

Again, the Court does not find a violation of the discovery rules here. The medical records and notice of intent were provided to defense counsel, albeit tardily. While strict compliance with the request for a list of all medical witnesses related to the examination of Loskoch was lacking, the Court finds no bad faith on the part of the Commonwealth.

Even assuming a minor violation of the discovery rules occurred because of the tardy disclosure, the Court is unaware of any prejudice suffered by the Defendant. Here, the medical testimony and records were relevant evidence to the case, but were in no way crucial to the verdict. The nature of the charges only required showing that the officer was shot in a vital part of his body; no evidence of injury is required. *See Section A. 1. a., supra.* The testimony of Officer Loskoch and the other investigators was quite sufficient to establish that Officer Loskoch was shot in the chest, and but for his Kevlar vest, the bullet would have penetrated his chest. Medical records and medical testimony is not necessary for a jury to know that the chest, specifically the left side of the chest, is a vital part of a person's body. Moreover, defense counsel was still able to adequately cross-examine the medical witness.[15] *Cf. Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 298 (1998) (no prejudice when late disclosure of exculpatory evidence did not impair defendant's ability to present evidence at issue). Thus, this Court finds that even if a discovery violation took place, no prejudice was suffered by Defendant and a new trial is not warranted.

### iii. Casey Pelton Disclosures

Defendant submitted a discovery letter to the Commonwealth dated August 11, 2016 requesting all inculpatory statements allegedly made by Defendant to anyone and a list of all witnesses the Commonwealth intended to call at trial.

---

[15] T.T. Vol. III, at 13-18.

15

Defendant claims, without citing to the record or other evidence, that the Commonwealth had knowledge as early as February 14, 2017, that Casey Pelton claimed that Defendant confessed to the shooting. At the Suppression Hearing held before Judge Fouse on August 9, 2017, the issue was not addressed among the various discovery matters.

The Commonwealth ultimately disclosed Pelton and the alleged confession to Defendant on September 3, 2017, followed by additional discovery materials on September 5, 2017. Due to this late disclosure, Defendant claims he had no time to prepare and present effective, meaningful cross-examination of Pelton, or time to marshal evidence and locate and secure the attendance of witnesses who could effectively impeach Pelton. This Court disagrees.

The record fails to reflect that Defendant suffered any harm because of the late disclosures. *See, Com. v. Rodgers*, 500 Pa. 405, 412–13, 456 A.2d 1352, 1355–56 (1983) (finding no prejudice where there was no indication that cross-examination was in any way impeded or that the delay in disclosure prevented possible impeachment of the evidence); *see also, Com. v. Counterman*, 553 Pa. 370, 399, 719 A.2d 284, 298 (1998) (finding no prejudice where defendant's ability ot present evidence in issue was not impaired by the late disclosure). A review of the record shows that defense counsel conducted an extensive cross-examination of Casey Pelton.[16] Furthermore, defense counsel was entirely able to, and did, locate and secure the attendance of witnesses—Wesley Lipscomb and Andre Ikard[17]—for the purpose of impeaching Casey Pelton's testimony.[18]

Accordingly, this Court finds no prejudice was suffered by Defendant and a new trial is not warranted.

---

[16] T.T., Vol. IV, at 221-270, 276-278.

[17] Both were fellow inmates on the same Pod as Pelton and Hollins around the time the alleged inculpatory statement was made.

[18] T.T., Vol. V, at 152-167 (examination of Wesley Lipscomb); T.T., Vol. V, at 168-181 (examination of Andre Ikard).

16

**3. Court erred in denying Defendant's pre-trial motions to suppress defendant's statements made to police outside Defendant's residence on October 29, 2015**

The United States Supreme Court ruling in *Miranda v. Arizona*, 384 U.S. 436 (1966), requires that a person must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel after being provided an adequate warning as to these rights before he is subjected to custodial interrogation. *See e.g. Commonwealth v. Fisher*, 466 Pa. 216, 352 A.2d 26 (1976); *Commonwealth v. Brown*, 375 A.2d 1260, 1264 (Pa. 1977).

In order to suppress statements in response to a violation of a defendant's *Miranda* rights, the Court must find that the defendant was subjected to both police custody and interrogation. *Commonwealth v. Turner*, 772 A.2d 970, 974 (Pa.Super. 2001).

"In Pennsylvania, the test for determining whether a suspect is in custody is whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted." *Commonwealth v. Eichinger*, 915 A.2d 1122, 1133-34 (Pa. 2007). Police detentions become custodial when, "under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest." *Commonwealth v. Mannion*, 725 A.2d 196, 202 (Pa.Super. 1999). The Court, in its consideration of the totality of the circumstances, must consider the reasonable impression conveyed to the person interrogated. *See Mannion*, 725 A.2d 196, 200 (Pa.Super. 1999). The Court should consider the basis for the detention; its length; its location; whether the suspect was transported, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. *Id.*

17

Interrogation is not limited to direct questioning initiated by law enforcement officials, but also includes the functional equivalent of interrogation, including "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006) (quoting *Commonwealth v. DeJesus*, 787 A.2d 394, 401 (Pa. 2001)). However, "not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances by an individual are admissible even without *Miranda* warnings." *Gaul*, 912 A.2d at 255.

In making its determination, the Court should consider the basis for the detention; its length; its location; whether the suspect was transported, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999).

Here, the testimony established that between 10:00 PM and 11:00 PM[19] police knocked on the door at the residence of Defendant and told the inhabitants to come outside. After ascertaining the presence of Defendant, a couple officers (Thomas and Hermick)[20] escorted Defendant across the street—the officers escorted Defendant a distance of approximately 15-20 yards.[21] While there, the officers asked questions of Defendant regarding the shooting of Officer Loskoch, where he was during the time of the shooting, where he stayed the night before, and inquired as to his hair style. Trooper Thomas and Lieutenant Hermick credibly testified that the

---

[19] T.T. Vol. VI., at 124.
[20] Theresa Tyson (neighbor) testified at a pre-trial proceeding on September 8, 2017 that she saw "maybe two" officers standing with Hollins while being questioned. *Suppression Transcript*, 9/8/17, p. 25.
[21] *Suppression Transcript*, 9/8/17, p. 43.

18

Defendant was not in handcuffs[22] and the officers did not have their weapons drawn nor did they threaten force while accompanying Defendant across the street and questioning him. Furthermore, following their relatively brief discussion,[23] the Defendant was free to leave.

While this Court finds that Defendant was seized by the officers that night, the nature of the seizure, under the totality of the circumstances, was more akin to an investigatory detention contemplated in *Terry*, and not the functional equivalent of arrest. Thus, this Court finds Defendant was not subject to custodial detention on the night of October 29, 2015.

Because of this Court's determination that the Defendant was merely seized for the purpose of an investigative detention akin to a *Terry* stop, and was not subject to a custodial detention, the second stage of the analysis regarding interrogation is rendered moot, and this Court finds that it acted properly in denying Defendant's motion to suppress the statements elicited on the night of October 29, 2015.

### 4. Trial Court erred on evidentiary rulings at trial

Defendant raises ten (10) distinct complaints of error on evidentiary rulings at trial.

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. *Jones*, 683 A.2d at 1193. In determining whether evidence should be admitted, the trial court must weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence. *Id.* Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. *Commonwealth v. Laich*, 566 Pa. 19, 777 A.2d 1057, 1061 (2001). Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact. *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186, 192, n. 11 (1977).

*Com. v. Reid*, 571 Pa. 1, 34, 811 A.2d 530, 550 (2002).

---

[22] T.T., Vol. IV, at 199. This testimony was not credibly contested as Brittney Hollins testified that Defendant was restrained, but she had no actual knowledge of this, only an assumption. T.T. Vol VI., at 130. Similarly, Jada Elmore testified that she was unable to see Defendant's hands. *Id.* at 50-51.

[23] T.T., Vol. VI, at 132. (Testimony of Brittney Hollins who stated that Earl Hollins was across the street for about 5 to 10 minutes and then was allowed to come back).

19

> To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. For evidence to be admissible, it must be competent and relevant. Evidence is competent if it is material to the issue to be determined at trial. Evidence is relevant if it tends to prove or disprove a material fact. Relevant evidence is admissible if its probative value outweighs its prejudicial impact. The trial court's rulings regarding the relevancy of evidence will not be overturned absent an abuse of discretion. *American Future Systems, Inc. v. BBB*, 872 A.2d 1202, 1212 (Pa.Super.2005), *affirmed*, 592 Pa. 66, 923 A.2d 389 (2007) (internal citations omitted).

*Conroy v. Rosenwald*, 2007 PA Super 400, ¶ 14, 940 A.2d 409, 417 (2007).

### i.  Court erred in permitting Michael Priolo to possess his police report while testifying without any claim of lost recollection

Defendant claims that it was error for this Court to permit Officer Michael Priolo to possess and utilize his police report while testifying without a prior claim of lost recollection. Pennsylvania Rule of Evidence 612 permits a witness to use a writing to refresh his memory "for the purpose of testifying while testifying, or before testifying." Pa.R.E. 612(a). Unlike the hearsay exception in Pa.R.E. 803.1(3) (Recorded Recollection of Declarant-Witness), Rule 612(a), does not permit the writing to be entered into evidence.

In *Com. v. Proctor*, 253 Pa. Super. 369, 373, 385 A.2d 383, 385 (1978), the Pennsylvania Superior Court adopted Michigan's rule laid out in *Moncrief v. City of Detroit*, 398 Mich. 181, 247 N.W.2d 783 (1976), regarding proper foundation to permit the use of a writing in order to refresh the memory of a witness:

> To permit the use of a writing in order to refresh the memory of a witness, the proponent must show: (1) that the witness' present memory is inadequate; (2) that the writing could refresh the witness' present memory; and (3) that reference to the writing actually does refresh the witness' present memory. (Footnote omitted).

*Com. v. Proctor*, 253 Pa. Super. 369, 373, 385 A.2d 383, 385 (1978) (quoting *Moncrief v. City of Detroit*, 398 Mich. 181, 247 N.W.2d 783, 787-788 (1976)).

20

Defendant argues that use of the document was improper because the proper foundation was not laid. However, a review of the record shows that prior to Officer Priolo using the document to refresh his recollection, counsel for the Commonwealth asked him, "[w]ould it assist you in refreshing your recollection form me to show you the narrative report so you can refer to it in your testimony?" to which the witness replied, "Yes."[24]

It appears from the context that Officer Priolo answered the Commonwealth's question regarding what was said at the hospital by Officer Loskoch regarding the incident and the description of the suspect. Following Priolo's answer, the Commonwealth sought more detail regarding the description given at the hospital. These additional details were contained in Officer Priolo's report, which prompted the Commonwealth to ask Priolo if his report would assist him in recalling the details of the description.

After the Court permitted the writing to be used to refresh Priolo's recollection, the Commonwealth asked the following:

[MR. TORRENCE: . . . ] Can you review that and

explain to the jury what it is that the officer

said to you at that time?

**A. He started out saying that he was, he**

**remembered the actor. He knows who this individual**

**was, he knows who it was, and it's when he told me**

**the name was Hollins. And he also provided me**

**another physical, he described his dreadlocks, his**

**cigar thickness of dreadlocks in the, in his, on,**

**in his hair.**

---

[24] T.T., Vol II, at 116.

Q. Okay. How much detail, to the best of your recollection, did he give you about the hair?

A. I was only able to provide or get information that it was a cigar size in thickness --

Q. Okay.

A. -- and that it was --

Q. All right. And is that reflected in your report? Is that what you utilized now to refresh your memory?

A. It is.

T.T., Vol. II, at 117.

Following this, the Commonwealth continued to question Priolo about his conversation with Officer Loskoch.

Q. And what did, what was that conversation? Relay it to the jury.

A. Officer Loskoch kept replaying the incident over and over in his head, over and over. I know this guy. I know this guy. And then he was able to provide a geographical location in Ambridge. He goes, "I think I've dealt with this guy in Ambridge on 10th Street, Kerr Street, Duss Avenue, somewhere in that area."

Q. Flip the page if you would. Is that

22

referenced in your report in the highlighted area?

**A. Yes.**

*Id.* at 119.

This Court is satisfied that the Commonwealth provided the foundation required by *Proctor*. Following some general testimony regarding what occurred at the hospital, the witness was asked, "[w]ould it assist you in refreshing your recollection form me to show you the narrative report so you can refer to it in your testimony?" to which the witness replied, "Yes."[25] Once the witness reviewed his report, his memory was actually refreshed. Moreover, it appears from the transcript that Officer Priolo did not read his report into the record, but rather read the report and testified from a presently refreshed memory.

Furthermore, even if this Court were to find that the use of Officer Priolo's notes to refresh his memory during his direct testimony was improper, the admission of such evidence was harmless as the witness had already testified generally to the events at the hospital before he reviewed his notes and only added a few details to what he already testified to prior to refreshing his recollection. *See e.g., Dean Witter Reynolds, Inc. v. Genteel,* 346 Pa. Super. 336, 345, 499 A.2d 637, 641 n.1 (1985) (finding error harmless where "[t]he witness had already testified generally as to the events of April 28, 1980 before he reviewed his notes. After he reviewed his notes, he was able to add only a few details to what he had already testified. Thus, the testimony given by Mr. Genteel after reviewing his notes was basically testimony corroborating his prior testimony about the April 28 transactions." *Id.*).

        ii.        **Court erred in permitting Commonwealth to elicit from Trooper Joshua Thomas hearsay statements of Eric Odom's girlfriend**

---

[25] T.T., Vol II, at 116.

23

Defendant claims that it was error for this Court to permit Trooper Thomas to testify regarding hearsay statements of Eric Odom's girlfriend. Hearsay is defined as, "[an] out-of-court statement offered to prove the truth of the matter asserted." *See Heddings v. Steele*, 514 Pa. 569, 526 A.2d 349 (1987); Pa.R.E. 801(c). The comment to Rule 801 further elucidates this definition:

> A statement is hearsay only if it is offered to prove the truth of the matter asserted in the statement. There are many situations in which evidence of a statement is offered for a purpose other than to prove the truth of the matter asserted.
> [. . .]
> More often, a statement, whether or not it is true, constitutes circumstantial evidence from which the trier of fact may infer, alone or in combination with other evidence, the existence or non-existence of a fact in issue. For example, a declarant's statement may imply his or her particular state of mind, or it may imply that a particular state of mind ensued in the recipient.

Pa.R.E. 801.

During the direct examination of Trooper Thomas, counsel for the Commonwealth questioned Trp. Thomas about the investigation he conducted regarding the shooting of Officer Loskoch. In the course of testifying, numerous objections were made by defense counsel on hearsay grounds. The Court permitted the testimony as non-hearsay because it was merely a narrative of the investigative process showing the information possessed by Trp. Thomas and illuminated for the jury his state of mind at the time and why he conducted the investigation in the manner he did.[26] *See Com. v. Hardy*, 2007 PA Super 48, ¶ 46, 918 A.2d 766, 777 (2007) ("Sometimes, out-of-court statements are offered not to prove the truth of the matter asserted but, for example, to explain the course of conduct undertaken by an investigating police officer. [. . . ] Such statements are not hearsay.") (*citing Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super.2003)).

---

[26] *See generally*, T.T., Vol IV, at 32-33.

24

The claim of error raised in Defendant's post-sentence motion regards a specific line of questioning regarding another portion of the investigation detailing other persons of interest and why they were ultimately excluded from the investigation.[27] Trp. Thomas testified that the authorities were able to learn of Eric Odom as a person of interest due to different tips that were received claiming he fit the description.[28] Trp. Thomas then testified that in pursuing the investigation, he contacted Eric Odom's girlfriend to ask her question about his whereabouts on the night of the shooting.[29] At this point, defense counsel objected on the grounds of hearsay. The Court permitted the testimony as it was not offered to prove that Eric Odom was *in fact* where his girlfriend said he was, but only to establish why Trp. Thomas and his investigators ultimately concluded that Eric Odom was not the shooter they were after.

Thus, the testimony of Trp. Thomas not being offered to prove the truth of the matter asserted, this Court did not abuse its discretion in overruling Defendant's objection.

### iii. Court erred in permitting Commonwealth to elicit from Trooper Joshua Thomas hearsay statements from an unidentified source of a description of the shooter

Defendant claims that it was error to permit Trooper Thomas to testify about the description of the shooter known to him at the time of his interview with the Defendant because such testimony included hearsay from unidentified sources.[30] As stated above, hearsay is "[an] out-of-court statement offered to prove the truth of the matter asserted." *See Heddings v. Steele*, 514 Pa. 569, 526 A.2d 349 (1987); Pa.R.E. 801(c).

The testimony elicited here was sought for the purpose of establishing what information regarding the suspect's description was known to Trp. Thomas and his investigators when they

---

[27] *See generally*, T.T., Vol. IV, at 43-47.
[28] *Id.* at 43.
[29] *Id.* at 45.
[30] *See generally*, T.T., Vol IV, at 59-60.

25

interviewed the Defendant. *See Hardy, Supra.* This testimony, offered for the purpose of establishing what was known to the investigators at a certain time during their investigation and how it influenced their investigation, was not offered to prove that the suspect, *in fact*, had such a description.

In short, the testimony by Trp. Thomas about what was known to him at the time of the investigation "to explain the course of conduct undertaken by an investigating police officer" is not hearsay, and this Court properly overruled Defendant's objection.

### iv. Court erred in refusing to permit Defendant to elicit testimony from Trooper Joshua Thomas regarding the photo line-up

Defendant claims that it was error to refuse Defendant to elicit testimony from Trooper Thomas regarding the photo line-up, how it was conducted, how the photos were complied, and who was present. Pennsylvania Rule of Evidence 602 states:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.

Pa.R.E. 602.

During his cross-examination of Trp. Thomas, counsel for the Defendant was permitted to elicit some questions regarding the personal knowledge of Trp. Thomas of the general procedure by which photos are selected for a photo array and the personal directives of Trp. Thomas regarding the photo line-up.[31] A number of objections were raised by the Commonwealth during this line of questioning on the basis that some of the questions sought to elicit testimony about facts of which Trp. Thomas had no personal knowledge.[32] The Court permitted questions regarding the procedure, if the witness knows what the procedure is,[33] but

---

[31] *See generally,* T.T., Vol. IV, at 133-146

[32] *Id.* at 138, 142.

[33] *Id.* at 138-139.

26

sustained the objections as to what how the particular photo array in this case was compiled and what occurred during the photo line-up on the basis that Trp. Thomas testified that he was not present when the photo array took place.[34]

Because Trp. Thomas was not present for the compilation of the photo array and was not present when the photo line-up took place, he could not have personal knowledge of the facts sought to be elicited by defense counsel's questions and was therefore incompetent to testify as regards those facts. Thus, this Court properly exercised its discretion in sustaining the Commonwealth's objections.

> **v.    Court erred in refusing to permit Defendant to elicit testimony from Casey Pelton regarding the identity of and the balance of the maximum sentence for every case for which he was on parole at the time he was arrested and detained in the Beaver County Jail**

Defendant claims that it was error for the Court to refuse to permit Defendant to elicit testimony from Casey Pelton regarding the identity of and the balance of the maximum sentence for every case for which he was on parole at the time he was arrested and detained in the Beaver County Jail.

A review of the Trial Transcripts shows that defense counsel was permitted to conduct an extensive examination of Casey Pelton, including substantial questions related to the identity and the balance of the maximum sentences for every case for which he was on parole at the time.[35]

The Commonwealth objected numerous times to an exhaustive inquiry into Mr. Pelton's entire criminal history on the basis of Pa.R.E. 609.[36] The Court ruled that defense counsel could

---

[34] *Id.* at 143.
[35] *See,* T.T., Vol. IV, at 227-255.
[36] *See, e.g., Id.* at 224.

inquire into Mr. Pelton's parole and parole violation history as it was relevant and within the bounds of Pa.R.E. 609, but not into Mr. Pelton's convictions.[37]

Following these rulings, counsel for Defendant continued questioning Mr. Pelton regarding his parole and violation histories. The cross-examination at this point became belabored and confused, which prompted the Commonwealth to raise another objection on the basis of relevance due to lack of probative value. The Court sustained the objection and instructed defense counsel to move on.[38] Defense counsel then continued to press the same line of questioning which prompted yet another objection by the Commonwealth.[39] Defense counsel was instructed again by the Court to move on. Following further questioning on these issues, an extensive side bar was held wherein the Court discussed the finer points of parole procedure.[40]

Throughout this episode, defense counsel was given multiple opportunities to elicit the information he sought from Mr. Pelton so long as it was within the bounds of Rule 609. The Court permitted extensive questioning of Mr. Pelton as to relevant and permissible details and many of the details sought by defense counsel were ultimately elicited from Mr. Pelton.[41]

Due to the foregoing, this Court finds that Defendant's claim that he was refused permission to elicit testimony regarding Mr. Pelton's parole is entirely baseless.

> vi. **Court erred in refusing to permit Defendant to elicit testimony from Loskoch whether he remembered smelling gun powder, and if not, whether he remembered telling anyone that he smelled gunfire during the incident**

---

[37] *Id.* at 225-226.
[38] *Id.* at 230.
[39] *Id.* at 231-232.
[40] *Id.* at 240-246.
[41] *Id.* at 254-256.

28

Defendant claims it was error for the Court to refuse to permit Defendant to elicit testimony from Officer Loskoch regarding his memory of the smell of gun powder. Defendant's allegation of error misconstrues the nature and purpose of the Court's ruling.

A review of the Trial Transcript shows that defense counsel asked Officer Loskoch, "Did you ever say that you could smell the gunfire, you could smell it as this process was going on?"[42] to which Officer Loskoch replied, "Of course you would be able to smell the gunfire in a closed cabin vehicle shooting multiple rounds."[43]

At this point the Commonwealth objected on the basis of improper impeachment. Following a brief argument, the Court conducted a sidebar. The substance of the sidebar is as follows:

> MR. TORRENCE: Your Honor, my understanding is
> that Mr. DiMartini is in the process of impeaching
> him with a prior inconsistent statement. The
> statement that he is utilizing is a statement from
> a news reporter or a news reporter is reporting
> what he said.
> I don't believe that is his statement. I
> don't believe he gets to impeach him with a
> statement from a TV person, and it's, he has it in
> writing, and he hasn't shown it to him.
> THE COURT: Is that correct?
> MR. DiMARTINI: The --

---

[42] T.T., Vol. V, at 90.
[43] Id.

29

THE COURT: Is that correct?

MR. DiMARTINI: Yes and no.

THE COURT: Well, if it's partially correct, you're not going to be permitted to do it.

MR. DiMARTINI: Well --

THE COURT: I mean a news reporter. Now, you can impeach based on a transcript, but a news reporter?

MR. DiMARTINI: This was a direct quote.

MR. TORRENCE: It is written as a direct quote. I don't know where that quote came.

THE COURT: Have you spoken to the news reporter?

MR. DiMARTINI: No, I --

THE COURT: Then I'm not permitting it.

T.T., Vol. V, pp. 91-92.

Pennsylvania Rule of Evidence 613(a) permits a witness to be impeached with his prior inconsistent statements. Rule 613(b) requires that if the evidence of a witness's prior inconsistent statement is extrinsic, the statement and its contents must be disclosed to the witness, the witness must be given an opportunity to explain or deny the making of the statement and an adverse party must be given an opportunity to question the witness.

If the impeaching party wishes to have the prior statement entered for substantive purposes as well as impeachment purposes, the prior statement must have been given under oath,

30

made in a writing signed or adopted by the declarant, or be a verbatim contemporaneous electronic recording of an oral statement. Pa.R.E. 803.1.

Here, defense counsel began to question Officer Loskoch about a minor detail regarding his memory of the incident in question. Defense counsel could properly question Officer Loskoch about his memory of the incident and even introduce extrinsic evidence of his prior statement, but only for impeachment purposes. Despite this, mere dissimilarities or omissions in prior statements do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness's testimony to be admissible as prior inconsistent statements. *See, McManamon v. Washko*, 906 A.2d 1259 (Pa. Super. 2006), *appeal denied* 921 A.2d 497, 591 Pa. 736.

Due to the foregoing, this Court finds that Defendant's claim that he was refused permission to elicit testimony regarding Officer Loskoch's memory of the odor of gun powder is misconstrued, and further, that the Court properly sustained the Commonwealth's objection as this minor detail does not suffice as impeaching evidence. *See, McManamon, Supra.*

### vii.     Court erred in refusing to permit Defendant to elicit testimony from Andre Ikard

Defendant claims it was error for the Court to refuse to permit Defendant to elicit testimony from Andre Ikard regarding personal knowledge of the manner in which Pelton would benefit from his testimony against Defendant.

As was stated above, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Pa.R.E. 602.

It is clear from the record that Andre Ikard had no personal knowledge of the manner in which Pelton would benefit from his testimony against Defendant, only an "an opinion based on

31

things that he knows other people have done in the past."[44] Thus, this Court properly excluded the proposed testimony.

### viii. Court erred in refusing to permit Defendant to elicit testimony from a cosmetologist experienced in African American hairstyles

As stated previously, evidence is admissible if it is relevant. In determining whether evidence should be admitted, the trial court must weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence. The Court may also exclude relevant evidence if its probative value is outweighed by a danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

A review of the record shows that the issue of the Defendant's hair was adequately addressed. The Court, in its discretion, determined that eliciting testimony from an expert on the different hairstyles of African-American men would not assist the jury and would be a waste of time.

Even assuming this Court erred, the error is harmless as this Court does not see how Defendant was prejudiced in the absence of this witness where testimony at trial already established that Defendant knew he matched the description of the suspect despite claiming he had braids and not dreads. Apparently, Defendant thought the two hair styles appear so similar he changed his hair style the day the shooting took place.[45] This fact alone indicates that the refusal to permit the hair expert to testify did not prejudice the Defendant.

### ix. Court erred in refusing to permit Defendant to elicit testimony from Jada Elmore regarding her efforts to locate and interview Prentice Tucker

---

[44] T.T. Vol. V, at 178 (quoting defense counsel, Dennis DiMartini, during a sidebar following a request for an offer of proof by the Commonwealth).

[45] *See* T.T., Vol. IV, at 205-206.

32

Defendant claims that the Court erred by not allowing him to elicit testimony regarding

the efforts of one witness, Jada Elmore, to locate another witness, Prentice Tucker, who did not

appear at trial. The Court, in its discretion, did not believe this line of questioning was relevant

and therefore excluded that line of questioning.

x.  **Commonwealth impermissibly stigmatized Defendant as a dangerous person by his expression of personal opinion of Defendant**

Defendant claims the Commonwealth engaged in misconduct by referring to the

Defendant in its closing argument as "stone cold" and "a serious criminal doing serious stuff."

This issue need not be addressed by this Court, as counsel for Defendant did not object at trial,

either at the time of the statements or at the completion of the prosecutor's argument, and

thereby waived this claim. *Com. v. Galloway*, 771 A.2d 65 (Pa. Super. 2001); *Com. v. Williams*,

455 A.2d 632, 500 Pa. 226 (1983).

**5. Trial Court erred by refusing to instruct the jury as to numerous instructions requested by Defendant.**

The Superior Court of Pennsylvania provides the relevant standard of review as follows:

> "A motion for a new trial based upon the sufficiency of the jury charge will only be granted when the court determines that the charge in its entirety and against the background of the evidence was erroneous and might have prejudiced appellant." *Beechwood Commons Condominium Ass'n v. Beechwood Commons Associates, Ltd.*, 397 Pa.Super. 217, 227, 580 A.2d 1, 6 (1990) (citation omitted). Erroneous jury instructions may be the basis for a new trial if it is shown that the instructions were fundamentally in error and might have been responsible for the verdict. *Ott v. Buehler Lumber Co.*, 373 Pa.Super. 515, 520, 541 A.2d 1143, 1146 (1988); *Hawthorne*, 352 Pa.Super. at 368, 508 A.2d at 303.

*Sedlitsky v. Pareso*, 425 Pa. Super. 327, 332, 625 A.2d 71, 74 (1993). Recently, in

*Commonwealth v. Sirmons*, No. 261 MDA 2016, 2016 WL 5884805, at *3 (Pa. Super. Ct. Sept.

9, 2016), the Superior Court, citing established precedent, held:

> [W]e must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and

can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa.Super. 2008), appeal denied, 606 Pa. 644, 992 A.2d 885 (2010) (quoting *Commonwealth v. Jones*, 954 A.2d 1194, 1198 (Pa.Super. 2008), appeal denied, 599 Pa. 708, 962 A.2d 1196 (2008)). The Court in *Sirmons* continued to quote the rule set out in *Baker*, stating:

> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Baker, supra* at 507 (quoting *Commonwealth v. Brown*, 911 A.2d 576, 582-83 (Pa.Super. 2006), appeal denied, 591 Pa. 722, 920 A.2d 830 (2007)).

The court in *Com. v. Taylor*, 583 Pa. 170, 876 A.2d 916 (2005) further summarized the rational basis for giving a requested instruction as follows:

> It is settled that "a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399, 400 (1980). Rather, there "must be some relationship *186 between the evidence presented and the law upon which an instruction is requested." *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395, 407 (1994). The reason for this rule is that, "instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict." *White*, 415 A.2d at 400. Accordingly, a criminal defendant must establish that the trial evidence would "reasonably support" a verdict **926 based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial. *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328, 1332-33 (1983).

*Taylor*, 583 Pa. 170, 185–86, 876 A.2d 916, 925–26 (2005)

Pa.R.Crim.P. Rule 647(E) provides:

34

(E) The trial judge *may* give any other instructions to the jury before the taking of evidence or at anytime during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case.

Pa.R.Crim.P. Rule 647(E). The Official Comment to section (E) provides:

It is intended that the trial judge determine on a case by case basis whether instructions before the taking of evidence or at anytime during trial are appropriate or necessary to assist the jury in hearing the case. The judge should determine what instructions to give based on the particular case, but at a minimum the preliminary instructions should orient the jurors to the trial procedures and to their duties and function as jurors. In addition, it is suggested that the instructions may include such points as note taking, the elements of the crime charged, presumption of innocence, burden of proof, and credibility. Furthermore, if a specific defense is raised by evidence presented during trial, the judge may want to instruct on the elements of the defense immediately after it is presented to enable the jury to properly evaluate the specific defense.

Official Comment to Pa.R.Crim.P. Rule 647(E).

Defendant claims this Court erred in refusing to instruct the jury as to the following requested jury instructions: No. 18 eyewitness identification instruction; No. 19 doubtful accuracy and duty to receive identification of doubtful accuracy with caution; No. 25 duty to consider current probation or parole status of a witness; No. 26 duty to consider current probation or parole status of witness at time he first talked to police; No. 35 limits on inferences to prove crime; No. 2 no adverse inference of guilt from fact that he has been detained in jail since arrest; No. 3 no adverse inference from fact that all the Deputies sat near Defendant.

As regards these requested instructions, this Court finds the following:

The concerns addressed by requested instructions No. 2 and No. 3 were adequately addressed by this Courts standard instruction that the Defendant is presumed innocent unless and until he is proven guilty beyond a reasonable doubt.[46] The concerns addressed by requested instruction No. 25 and No. 26 were adequately addressed by this Courts standard instruction that the jury should consider, as a factor when judging credibility of a witness, "Did the witness have

---

[46] T.T., Vol. VII, at 142-145.

35

any interest in the outcome of the case or any bias, prejudice, or other motive that might affect that witness' testimony?"[47] The concerns addressed by requested instruction No. 35 were adequately addressed by this Court's standard concluding and post-trial instruction.[48] The concerns addressed by requested instruction No. 18 were adequately addressed by this Court's standard concluding and post-trial instructions on identification.[49]

As regards the concerns addressed by requested instruction No. 19, there was no indication during the trial that the Officer Loskoch ever doubted or waffled on his positive identification of Defendant. Pursuant to the rule laid out in *Com. v. Kloiber*,[50] this Court properly exercised its discretion in denying Defendant's request for instruction No. 19.

Due to the foregoing, it is clear that the jury instructions provided in this case were adequate, clear, and had no tendency to mislead; neither were they erroneous nor prejudicial towards the Defendant in any way. Therefore, the requested relief is denied.

**C. request for reconsideration as the sentence for Count 2 is overly harsh and is outside the standard range.**

Defendant requests reconsideration of his sentence for Count 2[51] (Aggravated Assault of Law Enforcement Officer) as being overly harsh and outside the standard range. Defendant argues that the sentencing guidelines for Count 2 carries an O.G.S. of 13[52] and that Defendant

---

[47] T.T., Vol. VII, at 118; *see also, Com. v. Slyman*, 334 Pa. Super. 415, 434, 483 A.2d 519, 529 (1984)(trial court may properly refuse to grant a defendant's point for charge [. . . ] where the court provides a general instruction that the jury must consider in its deliberations the potential bias or interest with which any witness may have testified)(citing *Commonwealth v. Vickers*, 260 Pa.Superior Ct. 469, 394 A.2d 1022 (1978)).
[48] T.T., Vol. VII, at 125.
[49] T.T. Vol. VII, at 125-126.
[50] 378 Pa. 412, 424, 106 A.2d 820, 826 (1954).
[51] Defendant's post-sentence motion mistakenly requested reconsideration of the sentence for "Count 3," but goes on to describe the sentence for Count 2 (Aggravated Assault of Law Enforcement Officer). Due to the obvious typo, this Court will treat Defendant's request as a request to reconsider the sentence for Count 2 and Count 6.
[52] Defense counsel mistakenly cited the O.G.S. for Criminal Attempted Homicide (Count 3 in the information), which is 13; however, the sentence for which reconsideration was requested was Count 2 (Aggravated Assault of Law Enforcement Officer), which has no O.G.S. as it is an offense with a mandatory minimum pursuant to 42 Pa.C.S.A. § 9719.1.

36

has a P.R.S. of 2; therefore, according to the Basic Sentencing Matrix, the Standard Range for Defendant is only 72-90 months (6-7.5 years). This Court disagrees.

Imposition of proper sentence is matter vested in sound discretion of trial court. *Com. v. High*, 450 A.2d 158, 304 Pa.Super. 174, 1982; *Com. v. Galloway*, 448 A.2d 568, Super.1982; *Com. v. Corson*, 444 A.2d 170, 298 Pa.Super. 51, 1982; *Com. v. Ellison*, 439 A.2d 136, 293 Pa.Super. 320 (1982). "[T]he extent of sentence is a matter within the discretion of the trial judge and will not be disturbed if within the statutory limits." *Com. v. Zelnick*, 202 Pa. Super. 129, 131, 195 A. 2d 171, 173 (1963).

> **(a)** (1) Basic sentence recommendations. Guideline sentence recommendations are based on the Offense Gravity Score and Prior Record Score. ***In most cases***, the sentence recommendations are found in the Basic Sentencing Matrix (§ 303.16(a)). The Basic Sentencing Matrix specifies a range of sentences (i.e.--standard range) that shall be considered by the court for each combination of Offense Gravity Score (OGS) and Prior Record Score (PRS).

204 P.S. § 303.9(a)[emphasis added].

Ordinarily, sentencing guidelines are advisory, and when justified, a court acts well within its discretion to sentence outside the recommended ranges; *Com. v. P.L.S.*, 894 A.2d 120, Super. 2006, *reargument denied, appeal denied* 906 A.2d 542, 588 Pa. 780, *habeas corpus denied* 2012 WL 1828073, *denial of post-conviction relief affirmed* 2017 WL 6330898, and where no statutorily mandated sentence is implicated, trial judges in this Commonwealth are vested with broad discretion in sentencing. *Com. v. Rooney*, 442 A.2d 773, 296 Pa.Super. 288 (1982).

However, where the legislature has deemed to enact a mandatory minimum term of imprisonment, that statute must be followed and the standard guidelines in P.S. § 303.16(a) "shall not supersede the mandatory sentences provided." 42 Pa.C.S. § 9719.1(b).

42 Pa.C.S. § 9719.1 sets out the mandatory minimum term of imprisonment for the offense of Assault of Law Enforcement Officer.

> **(a) Mandatory sentence.--A** person convicted of the following offense shall be sentenced to a mandatory term of imprisonment as follows:
>
> 18 Pa.C.S. § 2702.1(a) (relating to assault of law enforcement officer)--not less than 20 years.
>
> **(b) Authority of court in sentencing.--**There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

42 Pa.C.S. § 9719.1(a)-(b).

Here, Defendant was sentenced on Count 2 to the mandatory minimum term of 20 years imprisonment. The sentencing judge has no authority under 42 Pa.C.S. § 9719.1(b) to order "any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence." *Id*. Defendant's argument that the sentence imposed is outside the guidelines is mistaken as the standard range for 18 Pa.C.S. § 2702.1(a) is 240 months (20 years) and the statutory max is 480 months (40 years).[53]

Therefore, this Court must deny Defendant's request as it has no authority under 42 Pa.C.S. § 9719.1(a)-(b) to impose anything less than 20 years, and the maximum sentence imposed must be at least twice the length of the minimum.[54]

As regards Defendant's request that this Court modify his sentence for Count 6 to run concurrent with the sentence imposed on Count 2, this Court is well within its discretion

---

[53] "[A] person convicted under subsection (a) shall be sentenced to a term of imprisonment fixed by the court at not more than 40 years." 18 Pa.C.S. § 2702.1(b).

[54] *See*, 42 Pa.C.S. §9756(b)(1)("The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.")

38

in ordering the sentences to be served consecutively; *Com. v. Wienckowski*, 537 A.2d 866, 371 Pa.Super. 153 (1988)(decision whether to run multiple sentences concurrently or consecutively is discretionary), and this Court will not alter or modify its decision in this case.

## CONCLUSION

Having addressed all of the issues and allegations made by Defendant in the foregoing Opinion and finding every issue raised to be without merit, Defendant's requested relief is DENIED.

An appropriate Order shall follow:

## IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
## P E N N S Y L V A N I A
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :

         :

      v.               :        Case No:    2638 – 2015

         :

EARL L. HOLLINS             :
    Defendant,             :

## ORDER

KNAFELC, J.                             APRIL _____, 2018

AND NOW, to wit, this _10th_ day of April, 2018, it is hereby ORDERED and DIRECTED that

Defendant's *Motion for Post-Sentence Relief* be disposed of in the following manner:

1.      Defendant's motion for arrest of judgment is DENIED.

2.      Defendant's motion for a new trial is DENIED.

3.      Defendant's motion for modification of sentence is DENIED.

4.      In accordance with Pa. R. Crim. P. 720(B)(4), Defendant is hereby notified of the

following rights upon entry of this order:

    a.  Defendant has the right to file an appeal with the Superior Court of Pennsylvania.

        The period to file an appeal expires thirty (30) days following the date of the denial

        of this post-sentence motion.

    b.  Defendant has the right to assistance of counsel in the preparation of the appeal.

    c.  Defendant has the right, if Defendant is indigent, to appeal *in forma pauperis* and to

        proceed with assigned counsel as provided in Rule 122.

40

d. Defendant has the qualified right to bail under Rule 521(B).

BY THE COURT:

S. J.

JUDY A. ENSLEN
CLERK OF COURTS
2010 APR 10 PM 1: 35
BEAVER COUNTY
PENNSYLVANIA

BY THE COURT
2018 APR 10 P 1: 33

41